Mr. Koufax is here for the appellants, Mr. Todd for the appellee, and Mr. Koufax, you Thank you, Your Honor. May it please the court. The question for the court to resolve today is relatively simply stated. May a municipality that is the sole provider of utilities be held liable under 3604B of the Fair Housing Act if that municipality provides those services, those utilities, in a discriminatory manner? We need not be detained long by the district court's opinion in this case. The reason is the district court operated under the incorrect standard. The district court explicitly stated that it was giving a narrow construction of the Fair Housing Act. The Supreme Court has stated repeatedly that the Fair Housing Act requires a generous construction that is consistent with its broad and inclusive purpose. Under that narrow reading of the Fair Housing Act, the district court came to the conclusion that 3604B of the Fair Housing Act only applies up to the time of acquisition of housing and does not apply after housing has been acquired. That interpretation simply cannot be squared with a lot of things, but most importantly can't be squared with the plain language of the statute. And, Your Honor, I have a board here with the statutory language on it. May I bring it a little closer and put it up? You may. Thank you. Let me direct the court's attention to a number of aspects of 3604B of the Fair Housing Act that mandate the conclusion that it applies to so-called post-acquisition conduct. First, the section applies to privileges of sale or rental. As many courts have acknowledged, the most fundamental privilege of a sale or rental is the right to occupy a home. Of course, the right to occupy a home comes after housing has been acquired. So Congress, in the use of the phrase, privileges of sale or rental, must have anticipated and clearly stated in the statute, anticipated this section applying to post-acquisition conduct. Every circuit that has considered this question, even those circuits that have taken the most narrow reading of the Fair Housing Act, have recognized that a privilege of sale or rental must include the privilege of occupying the housing. Second, the section refers to services and facilities. Services and facilities, again, are included in the coverage of 3604B. This provision would make no sense if the protection of the Act ended at the moment of acquisition. Services and facilities are provided to a tenant or an owner once they have acquired the housing. A prospective tenant doesn't get to use the swimming pool. A prospective tenant doesn't get access to the clubhouse. A prospective homeowner can't have utilities hooked up in his or her name prior to acquiring the housing. All of these services and facilities are only relevant upon acquisition of the housing. Again, another aspect of 3604B that clearly indicates that it applies to post-acquisition housing. The district court, in this case, interpreted the phrase, sale or rental of a dwelling, to mean just that moment of acquisition. Well, rental certainly doesn't even suggest that it's just the moment of acquisition. It's rental housing when you sign the lease, but it's also rental housing six months later, five years later. Rental, the connotation of the word, is an ongoing status. If you rent a dwelling, you're renting it when you sign the lease, but you're also a renter many years later. Isn't your best argument that the statute is ambiguous and therefore we should apply Chevron deference to the interpretation of the statute by the Department of Justice and the Department of Housing and Urban Development? The Department of Housing and Urban Development, which the Supreme Court has stated on numerous occasions, is entitled to great weight in its interpretation of the Fair Housing Act and that substantial deference should be given to it. It has, in three different sections, interpreted 3604B to apply to both post-acquisition conduct and perhaps most importantly for this case, to municipal services, the very conduct that is being challenged in this case, the discriminatory provision of municipal services. HUD has stated that 3604B applies to maintenance and repairs and that 3604B applies to owners and tenants as well as municipal services. Well, what does the clause or in the provision of services or facilities modify? Is it dwelling or is it rental and sale or privileges? Well, Your Honor, as you can see from the cases that have looked at that question, that may very well be ambiguous. However, for the case where HUD applies to a dwelling or sale or rental of a dwelling, because when you look at the phrase sale or rental of a dwelling, it is not limited simply to the moment of acquisition. Provision of services related to the sale or rental of a dwelling must include the provision of services and facilities after it has actually been, the housing has actually been acquired. Otherwise, it would have no meaning. There is no provision of services and facilities at the moment of the acquisition of the housing. Back to Judge Wilson's question, if we find the statute is unambiguous, what deference do we owe the Department of Justice and HUD's regulatory scheme and interpretation thereof? Well, notably, the Supreme Court, when it has looked at HUD's interpretation of the Fair Housing Act, it has not required a finding of ambiguity. It has instead looked at HUD's interpretation of the Fair Housing Act as further support for its own conclusion. And that's come up in the context of standing and how the Supreme Court has addressed the standing question under the Fair Housing Act. So either if the language is clear, as I assert it is when you look at privileges of sale, you look at services and facilities, you look at the term rental, that it applies to post-acquisition conduct, or if there are aspects of the language that are ambiguous, certainly resorting to the interpretation by HUD that it does apply to post-acquisition conduct and it applies specifically to municipal services is appropriate and this Court may do it. Let me ask you about your reliance on the Inclusive Communities Project case, which interpreted a different subparagraph, 3604A, but which did not include in subsection B the phrase, otherwise make unavailable. What is the difference here? Well, let me say two things about the ICP case. One is the ICP case is very instructive for interpreting 3604B because one of the things that the ICP case relied on to determine, yes, there is disparate impact as provided, Congress meant to provide for a disparate impact claim under the Fair Housing Act, is it looked at the case law between 1968 when the Act was passed and 1988 when Congress amended the Act in a number of significant ways. There had been a host of cases that said there is disparate impact available under the Fair Housing Act in that 20-year time period. Congress, we must presume, was aware of that and they concluded not to amend the Fair Housing Act to remove disparate impact. Same goes for 3604B. In the 20-year period between 1968 and 1988, 3604B was being applied to current occupants and those that Congress was aware of those cases applying the Fair Housing Act and 3604B specifically to current occupants, yet Congress did not amend the statute to correct those court decisions to say, no, we meant to limit the application of 3604B. Exactly the same analysis the Supreme Court went through in the ICP decision related to disparate impact. Now, for the question of whether disparate impact covers a 3604B claim or is available for a 3604B claim, first, the Court need not reach that question because it was not ruled on by the district court. However, 3604B has nothing about its language that would suggest it's not covered by the ICP's decision, which was the Fair Housing Act allows for disparate impact claims, did not limit it to 3604A or 3605, the provisions of the statute that were at issue in ICP. Well, but the Court said, let me just quote it, here the phrase otherwise make unavailable is of central importance to the analysis that follows. That is correct. However, it also concluded at the end there are four reasons why we're finding disparate impact is available under the Fair Housing Act. One was that make otherwise unavailable language. Another was the parallel construction and interpretation of Title VII in the ADA. Another one was the purpose of the Fair Housing Act, which, of course, 3604B is part of the Fair Housing Act and shares the same purpose. And the fourth was what I just discussed, the fact that Congress did not amend the Fair Housing Act in any way between 68 and 88 to eliminate disparate impact, even though courts were applying it. So the make housing otherwise unavailable language was only a small part of the ICP's reasoning to apply disparate impact. And let me finally note that it also applied disparate impact to 3605. 3605 does not have the making housing unavailable language. And as you'll note in our gray brief, that 3605 and 3604B share virtually identical language. The only difference, 3604B applies to terms and conditions of housing. 3605 applies to lending transactions. So that ICP decision applied disparate impact to a section that is identical to 3604B and doesn't have the making housing otherwise unavailable language. Thank you. Thank you, Mr. Colfax. You've reserved some time for rebuttal. We'll hear from Mr. Todd on behalf of the city. Can you leave that up? I might want to ask Mr. Todd some questions about the language. Why don't we move it up so it's not blocking counsel's view? You can move it over. Want to move it over to the side? Thank you. Good morning, and may it please the court. My name is Jeff Todd. I'm the city attorney in LaGrange and represent the city in that capacity in this appeal. I'm happy for the board to be up because both sides of this case are arguing strenuously plain reading here this morning to the panel. The plain language of 3604B of the act... ...to the Department of Justice and the Department of Housing and Urban Development's interpretation of the statute. I would agree that if, as has been cited today, the Chevron case, the question is whether Congress has directly spoken on the issue. That's the question that we start with. If Congress has spoken and we think this is unambiguous, then there's no need to look toward administrative regulation interpretations. It seems as if if Congress intended the subsection B to apply strictly to the beginning, the sale or the rental, they would not have included language like the privileges of sale or rental of a dwelling, or even more importantly, or in the provision of services or facilities. What do you think Congress meant by the term or in the provision of services or facilities? What did Congress mean by that? What you'll find that the cases show, Judge, is that you have to... We're recording your comments, so you'll have to speak in the microphone. What you'll find that the cases look toward and consistently say is that you have to continue to read that phrase. The provision of services or facilities in connection therewith, it's in connection therewith that the courts have repeatedly looked toward as modifying the sale or rental of a dwelling. It's not modifying the dwelling, it's modifying the sale or rental of a dwelling. And there are a number of cases, particularly, as you know, district court cases within the 11th Circuit that state precisely that. Subsection B is not written to capture the actions of third-party service providers, which are unrelated to that acquisition transaction, and also, as in our case, occur after the acquisition transaction. Plaintiffs hope to use the courts to strike down two long-term policies of the city, and you're familiar with those policies. One, collateral debt policy, requires anyone with a lawful debt to the city to pay that debt in conjunction with its utility bill. And then the identity fraud policy requires a federally or state-issued photo identification in order to open a utility account. We formally required social security number in the beginning of the account process. We don't anymore, but that's still technically a part of the case. It's important that plaintiff only seeks relief under... What do you not require on social security numbers now? Sir? You said you don't require social security. Social security number, which is part of this case, is no longer required by the city. That policy has been rescinded. So social security number is not required at the beginning of the account opening process. Do you, did you substitute something else for it, or just delete it? The ordinance was modified so that if a social security number is not given, and the purpose of that is for a credit report. This is a credit transaction. You... Well, one of the amicus parties has suggested that you could use the individual tax identification number and be more expansive. Well, we could. My folks, the people that do this day in and day out with the city of LaGrange, do not have nearly the confidence in their ability to lessen identity fraud with that tool than the tools that they're currently using. Judge, the question really, from our perspective, is not whether this is the best policy. The question is whether this policy violates the federal housing, Fair Housing Act. You still have to have, the immigrant still has to have a government issued ID though, right? And any, everyone has to have a government issued ID. Okay, all right. Is housing unavailable if there's no utility service? That's not pled in the complaint. And there are a number of cases, and we'll talk about them if I have time, where this precise issue has come up. The, a couple or three district court cases in this circuit. And there is a timeline. And if, in our case, the delivery of these services are not integral and happening at the closing table, then that's right. The act simply doesn't include them in its prohibitions. So if there was an apartment complex, like it was, you're, the city is not involved in this rental of property. But if an apartment complex was requiring that, that utilities be turned on in connection with the rental of an apartment, would that be a different situation? I don't know, frankly, how that works. I know in a number of places, you know, the utilities are included in the rent. I can't answer that question factually. It's not in the record and it's not pled in the complaint. Is the city the exclusive provider of utility services for commercial buildings as well in the city of LaGrange? The city, in fact, is not citywide. And of course, this is outside of the record. We don't provide all utilities in all sections of the city. But for the purposes of this appeal, we are pled to be the sole utility provider throughout the city. Let me pose a hypothetical. And this is just a hypothetical now. Let's say the mayor of the city of LaGrange instructs the director of the utility department to cut off water and sewer and utility services to certain neighborhoods that are majority, minority neighborhoods for whatever reason. That wouldn't fall within the amendment of the Fair Housing Act? Well, first of all, of course, as you well know, that's not before us. But that would violate any number of laws. Now, whether it violated 3604B may be a different question. That would violate equal protection. It wouldn't violate this subsection B? I don't think it would. I don't think it would. And let's remember, the Fair Housing Act is not just 3604B. There are a number of provisions which are aimed at different evils that the Act was trying to remedy. One of them is 3604F2, and the language is almost identical to the language in section 3604B. That applies to post-acquisition discriminatory conduct, doesn't it? Well, it does, and it expressly does. And as pointed out in our brief, 3604F2 actually was amended in 1988, I believe, and it expressly was amended to cover not only those acquiring housing, but, quote, intending or residing in the dwelling after it is sold, rented, or made available. We actually think 3604F2 is a great argument for us because 3604F2 shows that Congress knows when they want to reach post-acquisition behavior, Congress knows how to do it. They went back in and modified it to expressly apply to after-housing acquisition behavior. So we don't think that 3604F2 is at all parallel in all of the cases cited by the plaintiffs that refer to that code section. We think are irrelevant to this appeal. I have some questions on your additional arguments that were not mentioned by the trial judge in his opinion. Yes, sir. But which I presume were presented to the trial judge in the lower court, right? They were, yes, sir. And specifically about the failure to meet the pleading requirements of the Inclusive Community Projects case, which seems to bring the disparate impact into this case. You want to speak to that? Yes, sir. I'd be glad to. It was, that was really our third argument because that argument, as you know, we're required to assume that inclusive communities somehow deemed that disparate impact analysis was going to be available for every aspect of the Fair Housing Act, which when you look at the individual sections of the act, it is not at all logical. The court was concerned about what would happen if particularly government policies, if the government were held liable for a mere statistical disparity. So inclusive communities inserted two barriers, pleadings barriers, prima facie barriers, before you could even plead disparate impact under 3604A. One of those was that the policy at issue is required to be artificial, arbitrary, and unnecessary. Artificial, arbitrary, and unnecessary. Well, I've looked at the complaint, and it doesn't use those words, but it does use unjustified. We would submit that there is a chasm in between unjustified. That's what the plaintiffs are saying. Other people have many better policies that work better for our constituencies and for the plaintiffs. And that may well be true, but that's more in the line of an unjustified argument. What the plaintiff has to have pled here, which they did not, is artificial, arbitrary, and unnecessary. Well, I'm not even sure I saw the word unjustified. It says not necessary in paragraph 73 of the complaint. I see that. And that is a long way from artificial, arbitrary, and unnecessary. The court also, as a second prong from inclusive communities, added a pleading requirement that you're familiar with that was called robust causality. Now, frankly, I don't know, and maybe we won't know for the next several years exactly what robust causality looks like. But the plaintiffs in this case can't even meet causality. What they have presented in pleading stage, which, of course, we're not admitting, is that particularly the court debt policy, as they call it, has affected African-Americans at a higher rate than African-Americans in the city. But the cause and effect here is, did our policy prevent the plaintiffs and those people that the plaintiffs are stating have been harmed by the policy, were they prevented from acquiring housing? And the answer to that is no. So there's not only not robust causality, the plaintiffs have made no pleading of causality at all. And even if you assume disparate impact analysis applies under inclusive communities, which we obviously do not concede, then the plaintiff cannot meet those two barriers. We've noted in our brief, plaintiff has cited as many as 1111th Circuit Court, as many as nine 11th Circuit Court cases. But as we discussed earlier, 3604F cases shouldn't count. Really, six of the nine cases cited as being in support of plaintiff's position are not 3604B cases. The three remaining cases, I think one the court should take note of so that there's no doubt that the plaintiff's position has not been endorsed by this court. Woodward v. Fanboy from 2002, first of all, like almost all of these cases, the case involved allegations of egregious intentional misconduct. In this case, it was sex in exchange for rent. So it's, of course, distinguishable from the allegations of the plaintiff's complaint. But more importantly, this court in the Fanboy case wrote a footnote that specifically said we are not making a decision with regard to plaintiff's argument regarding in the provision of services or facilities. This court has never found, as plaintiff has requested, many district courts, as you're aware, have found similarly to Judge Batten in our lower court. The other circuits you'll note in our brief, there's only one circuit, and that's the Ninth Circuit that has found similar to what plaintiff requests in this case. Let me go back to ask you about the pleading requirements. There's been a subsequent case after you filed your briefs from the Eighth Circuit, Ellis v. City of Minneapolis. Have you run across that? I don't think so, Your Honor. All right. Well, let me also ask you about the difference between 3604B and 3604A because you did raise that in your brief. Well, 3604A is aimed at the actor, the seller, the renter. Well, specifically, the phrase, otherwise make available. Oh, well, of course. You cannot read inclusive communities without coming away with, and because it's quoted by Justice Kennedy, or otherwise make available was of central importance to the determination that subsection A fell under disparate impact analysis. You're exactly right. For those reasons and those outlined in our brief, we think that and would ask for the court to affirm the decision of the lower court in this manner. Thank you, Mr. Todd. Mr. Colfax, you have some time remaining. Thank you, Your Honor. Let me address a few of the questions that Judge Vincent, you raised related to disparate impact. First, all of the arguments about the inclusion of the phrase making housing unavailable are inconsistent with the fact that ICP also applied disparate impact to section 3605, which does not include that. Well, they mentioned the school board of New York versus Harris, but just in passing, that was what they had done in the past, but I don't think they adopted that or said anything really incorporating it. Well, there were two provisions at issue in ICP 3604A and 3605, and in its conclusion of saying disparate impact is available under the Fair Housing Act in that general statement, the Supreme Court then articulated four reasons. One of them was the forward-looking language like making housing unavailable, but then there were three other reasons that apply just as much to 3604B as they do to 3604A, and of course, the comparison of the language of 3605 and 3604B really answers that question. On the issue of causality, I think the city misunderstands and misreads the disparate impact law related to causality. Causality is addressed by determining what is the action being challenged, what is the policy being challenged. Does that fall disproportionately on a protected class? The Supreme Court was worried about when you have third-party actors that may be affecting it, or in the case that was before the court, there were actually federal regulations that were requiring Texas to take certain actions. So it wasn't Texas's policy, right? The federal government was affecting it. So the causal connection is between the policy and the impact observed. It's not whether or not the underlying difference in the population has been created by the policy. Robust causality? That is robust causality. Let me ask you about the arbitrary and unnecessary point. You've alleged that it's unnecessary in several different ways, but is it arbitrary, what they've done? It is arbitrary. I don't think you've alleged that, but is it? It is arbitrary, and what is most important is that arbitrary, artificial, unnecessary language that the Supreme Court used, it is really a merits question. A number of circuits and HUD have looked at disparate impact claims and put together a standard for determining, is there a disparate impact claim that can be proven here? I asked the other counsel about the Ellis case from the Eighth Circuit, which says this is a pleading requirement. Have you seen that case? I have not seen that case. Recently, the Waples decision came down out of the Fourth Circuit, which addressed this question and the question of causality and the artificialness, and reaffirmed the standard that courts have used for determining whether there's disparate impact, which is a burden-shifting process that really goes to the merits here. Thank you, Mr. Colfax. Mr. Todd, well, that completes the docket, and court is adjourned. All rise.